UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVEN V. ROWLES, | ) | Case No. SA CV 11-765-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

On May 27, 2011, plaintiff Steven V. Rowles filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

1   Plaintiff presents two disputed issues for decision:  (1) whether the

2   Administrative Law Judge ("ALJ") properly considered the opinion of an

3   examining physician; and (2) whether the ALJ properly considered plaintiff's

4   credibility.  Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 2-7;

5   Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-7.

6   Having carefully studied, inter alia, the parties's written submissions, the

7   Administrative Record ("AR"), and the decision of the ALJ, the court concludes

8   that, as detailed herein, the ALJ improperly rejected the opinion of plaintiff's

9   examining physician, as he completely ignored it, and inappropriately discounted

10   plaintiff's credibility, as the reasons he gave for doing so were not clear and

11   convincing reasons supported by substantial evidence.  Therefore, the court

12   remands this matter to the Commissioner of the Social Security Administration

13   ("Commissioner") in accordance with the principles and instructions enunciated in

14   this Memorandum Opinion and Order.

15   **II.**

16   **FACTUAL AND PROCEDURAL BACKGROUND**

17   Plaintiff, who was forty-five years old on the date of his April 21, 2010

18   administrative hearing, is a high school graduate and completed one quarter of

19   college.  AR at 33, 35, 206.  His past relevant work includes employment as a

20   production technician and chemical operator technician.  AR at 69.

21   On March 31, 2008, plaintiff filed an application for a period of disability

22   and DIB, alleging an onset date of August 14, 2007, due to back pain.[1]  AR at 15,

23

24

25

26   [1]   Plaintiff has acquired sufficient quarters of coverage to remain insured
27   through June 30, 2012.  AR at 15.

28   2

206.  Plaintiff developed back pain after falling at work.[2]  AR at 463.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing.  AR at 118-26.

On April 21, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR at 31-76.  The ALJ also heard testimony from Alanson Mason, a medical expert, and Mrs. Ellison, a vocational expert.  AR at 56-74.  On May 28, 2010, the ALJ denied plaintiff's claim for benefits.  AR at 15-23.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since his alleged onset date of disability, August 14, 2007.[3]  AR at 17.

At step two, the ALJ found that plaintiff suffered from the following severe impairment:  lumbar spondylosis with disc degeneration at L5-S1 and a disc protrusion at L4-5.  *Id.*

---

[2]    Plaintiff first sustained back injuries from a car accident on or about March 2004.  AR at 396.  On September 6, 2004, plaintiff injured his lower back in a slip and fall accident at work.  AR at 466.  Plaintiff applied for DIB, which was denied on April 26, 2007.  AR at 84-88, 116.  Res judicata does not apply in this instance as plaintiff was unrepresented by counsel in his prior claim.  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996).  On June 14, 2008, plaintiff was involved in another car accident, during which he sustained injuries to his neck and back.  AR at 463.

[3]    The Administrative Record indicates that plaintiff was employed until October 2007.  AR at 268, 275.  But plaintiff did not engage in substantial gainful activity from August 14, 2007 through his October 2007 termination.  AR at 36-38.  Instead, plaintiff was on leave for six weeks following the slip and fall incident and terminated shortly after his return because he was unable to perform the job duties.  *Id.*

1    At step three, the ALJ found that plaintiff's impairment did not meet or

2    medically equal one of the listed impairments set forth in 20 C.F.R. part 404,

3    Subpart P, Appendix 1 (the "Listings"). AR at 17-18.

4        The ALJ then assessed plaintiff's residual functional capacity ("RFC")[4] and

5    determined that he had the RFC to perform light work with the following

6    limitations: "lift and carry 20 pounds occasionally, 10 pounds frequently; stand

7    and walk for 2 hours in an 8 hour day; sit for 6 hours in an 8 hour day; pushing

8    and pulling no more than lifting and carrying; option to change from sitting to

9    standing and back at will; occasionally climb stairs, but no ladders; occasionally

10   balance, stoop, and kneel; no crouching or crawling; no extremes of cold; no

11   vibrating tools; no unprotected heights; and no hazardous equipment." AR at 18.

12       The ALJ found, at step four, that plaintiff was incapable of performing his

13   past relevant work. AR at 22.

14       At step five, the ALJ determined that, based upon plaintiff's age, education,

15   work experience, and RFC, plaintiff could perform "other work that exists in

16   significant numbers in the national economy," including Cashier II and Order

17   Clerk. AR at 22-23. Consequently, the ALJ concluded that plaintiff did not suffer

18   from a disability as defined by the Social Security Act. AR at 23.

19       Plaintiff filed a timely request for review of the ALJ's decision, which was

20   denied by the Appeals Council. AR at 1-4. The ALJ's decision stands as the final

21   decision of the Commissioner.

22

23   _____

24   [4]   Residual functional capacity is what a claimant can do despite existing
     exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
25   1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step
     evaluation, the ALJ must proceed to an intermediate step in which the ALJ
26   assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
     F.3d 1149, 1151 n.2 (9th Cir. 2007).
27

28                                          4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

5

**IV.**

**DISCUSSION**

**A.     The ALJ Failed to Consider the Opinion of an Examining Physician**

Plaintiff argues that the ALJ improperly rejected the opinion of his examining physician, Dr. Hooman Rastegar.  Pl. Mem. at 2-4; Reply Memorandum in Support of Plaintiff's Complaint ("Pl. Reply") at 1-4.  Specifically, plaintiff contends that the ALJ failed to consider Dr. Rastegar's opinion.  Pl. Mem. at 2-4; Pl. Reply at 1-4.  The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R.§§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other

1   opinions, the ALJ must provide specific and legitimate reasons supported by

2   substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific

3   and legitimate reasons supported by substantial evidence in rejecting the

4   contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

5   non-examining physician, standing alone, cannot constitute substantial evidence.

6   *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*

7   *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

8   813, 818 n.7 (9th Cir. 1993).

9         Dr. Rastegar, an anesthesiologist at One Stop Multi-Speciality Medical

10  Group, Inc., examined plaintiff in connection with a worker's compensation claim

11  on March 9, 2010.  AR at 636-40.  Dr. Rastegar took plaintiff's history and

12  conducted an examination, but did not review any diagnostic studies or medical

13  records.  AR at 638.  The objective findings identified by Dr. Rastegar include:

14  decreased range of motion in the lumbosacral spine; paravertebral muscle spasm in

15  the lower lumbar area; tenderness over the L4-5, L5-S facets bilaterally; the facet

16  loading was positive for pain in the lower lumbar area; and both the straight leg

17  raise and Lasegue's test were positive bilaterally.  AR at 637-38.  Dr. Rastegar

18  diagnosed plaintiff with:  low back pain;  bilateral lower extremity radiculopathy;

19  lumbar degenerative disc disease with 2-3 mm. disc bulge at T11-T12, 2-3 mm. at

20  L3-L4, 4 mm. at L4-L5, and 6 mm. at L5-S1; moderate left and mild right neural

21  foraminal narrowing at L4-L5; moderate bilateral facet hypertrophy with mild to

22  moderate central canal narrowing; and mild left and mild to moderate right neural

23  foraminal narrowing at L5-S1.  AR at 638.  Dr. Rastegar recommended a lumbar

24  epidural steroid injection.  *Id.*

25        Subsequently, Dr. Rastegar reviewed and approved a Medical Assessment

26  of Ability to Do Work-Related Activities (Physical) completed by Myron Durrant,

27

28                                        7

1   an examining chiropractor ("Medical Assessment").  AR at 644-47.  In the

2   Medical Assessment, Dr. Rastegar opined that plaintiff could occasionally lift and

3   carry up to ten pounds; sit, stand, and walk in fifteen-minute increments; and push

4   and pull occasionally.  AR at 644-46.  Dr. Rastegar restricted plaintiff from

5   climbing, balancing, stooping, crouching, kneeling, and crawling.  AR at 646.  Dr.

6   Rastegar concluded that plaintiff was temporarily totally disabled ("TTD").[5]

7        Here, the ALJ concluded that plaintiff: could lift/carry/push/pull twenty

8   pounds occasionally and ten pounds frequently; could stand/walk for two hours in

9   an eight-hour day; could sit for six hours in an eight-hour day; must have the

10  option to change from sitting to standing and back at will; could occasionally

11  climb stairs, but no ladders; could occasionally balance, stoop, and kneel; and was

12  restricted from crouching, crawling, extremes of cold, vibrating tools, unprotected

13  heights, and hazardous equipment.  AR at 18.  In reaching that determination, the

14  ALJ gave no weight or little weight to five other treating, examining, and State

15  Agency physicians, and accorded great weight only to the medical expert, Alanson

16  Mason.  AR at 19-21.  With respect to each of these physicians other than Dr.

17  Mason,  the ALJ discussed the physician's opinion and gave reasons for rejecting

18  it.

19       But the ALJ ignored Dr. Rastegar's examination and Medical Assessment,

20  except to state that he would disregard any TTD determinations, such as in the

21  Medical Assessment, because the Commissioner had the sole discretion to

22  determine disability.  AR at 21.  The ALJ has a duty to consider all medical

23  

24       [5]   TTD "means that an individual is 'totally incapacitated' and 'unable to earn
25  any income during the period when he is recovering from the effects of the
    [workplace] injury.'"  *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1103 n.2 (C.D.
26  Cal. 2002) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597,
27  600, 605 (9th Cir. 1996)).

28                                          8

1  evidence.  20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate

2  every medical opinion we receive.").  In ignoring Dr. Rastegar's opinion, the ALJ

3  erred.[6]

4       Even assuming, as defendant contends, that the ALJ's reference to the

5  Medical Assessment constituted a discussion of Dr. Rastegar's opinion (*see* AR at

6  21), the ALJ still failed to provide specific and legitimate reasons for rejecting it.

7  The ALJ correctly noted that "the determination of disability is one that is left to

8  the sole discretion of the Commissioner."  AR at 21.  Nevertheless, this, by itself,

9  is not a specific and legitimate reason for rejecting a physician's opinion.  The

10  ALJ has a duty to follow proper procedure and evaluate all medical evidence.  *See*

11  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2001) (ALJ cannot

12  avoid his duties by simply ignoring an opinion); *Booth*, 181 F. Supp. 2d at 1105

13  (stating that an ALJ may not disregard a "medical opinion simply because it was

14  initially elicited in a state workers' compensation proceeding" or couched in

15  workers' compensation terms).  The ALJ cannot reject the opinion of an

16  examining physician without providing specific and legitimate reasons.  *See*

17  *Lester*, 81 F.3d at 830-31; *Smith v. Astrue*, No. 10-4463, 2011 WL 5294848, at *4

18  (N.D. Cal. Nov. 3, 2011) ("Although the treating physician's opinion is not

19  necessarily conclusive as to either a physical condition or the ultimate issue of

20  disability, an ALJ must provide 'specific and legitimate reasons for rejecting the

21  opinion of the treating physician.'") (quoting *Murray v. Heckler*, 722 F.2d 499,

22  502 (9th Cir. 1983)); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.

23  1993) ("'The administrative law judge is not bound by the uncontroverted

24  opinions of the claimant's physicians on the ultimate issue of disability, but he

25  

26     [6]   The ALJ was also silent as to the opinion of Dr. Eduardo E. Anguizola, an
27  examining anesthesiologist.  AR 517-29, 583-88.

28                                              9

1   cannot reject them without presenting clear and convincing reasons for doing so.'"

2   (quoting *Montijo v. Sec'y of Health & Human Servs.*, 729 F.2d 599, 601 (9th Cir.

3   1984)).

4      Here, Dr. Rastegar did not simply provide a conclusion of disability, but

5   also offered an opinion as to plaintiff's limitations.  The ALJ completely

6   disregarded the opined limitations.  The ALJ's conclusory rejection of all TTD

7   determinations does not reflect a proper consideration of Dr. Rastegar's opinion.

8   Accordingly, the ALJ erred because he failed to consider, much less provide

9   specific and legitimate reasons supported by substantial evidence for rejecting, the

10   opinion of Dr. Rastegar.

11   **B.**  **The ALJ Failed to Provide Clear and Convincing Reasons for**

12      **Discounting Plaintiff's Subjective Complaints**

13      Plaintiff argues that the ALJ failed to make a proper credibility

14   determination.  Pl. Mem. at 4-7; Pl. Reply at 4-9.  Specifically, plaintiff contends

15   that the ALJ did not provide clear and convincing reasons that are supported by

16   substantial evidence.  Pl. Mem. at 4-7; Pl. Reply at 4-9.  The court agrees.

17      An ALJ must make specific credibility findings, supported by the record.

18   SSR 96-7p.  To determine whether testimony concerning symptoms is credible, an

19   ALJ engages in a two-step analysis.  *Lingenfelter*, 504 F.3d at 1035-36.  First, an

20   ALJ must determine whether a claimant produced objective medical evidence of

21   an underlying impairment "'which could reasonably be expected to produce the

22   pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947

23   F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

24   malingering, an "ALJ can reject the claimant's testimony about the severity of her

25   symptoms only by offering specific, clear and convincing reasons for doing so."

26   *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

27

28               10

1   2003).  An ALJ may consider several factors in weighing a claimant's credibility,

2   including:  (1) ordinary techniques of credibility evaluation such as a claimant's

3   reputation for lying; (2) the failure to seek treatment or follow a prescribed course

4   of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

5   1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47 (9th Cir. 1991) (en banc).

6       At the first step, the ALJ found that plaintiff's medically determinable

7   impairments could reasonably be expected to cause some of the alleged symptoms.

8   AR at 19.

9       At the second step, because the ALJ did not find any evidence of

10  malingering, the ALJ was required to provide clear and convincing reasons for

11  discounting plaintiff's credibility.  Here, the ALJ found that plaintiff's statements

12  "concerning the intensity, persistence and limiting effects of [his] symptoms are

13  not credible to the extent that they are inconsistent with the [RFC] assessment."

14  AR at 19.  The ALJ provided two reasons for discounting plaintiff's credibility:

15  (1) plaintiff only received conservative treatment; and (2) plaintiff's daily

16  activities were inconsistent with his alleged symptoms.  AR at 21-22.  These were

17  not clear and convincing reasons supported by substantial evidence.

18      First, the ALJ noted that plaintiff received conservative treatment.  AR at

19  21.  Specifically, the ALJ stated that plaintiff had few treatment records, did not

20  undergo any epidural injections as recommended, and did not receive any

21  recommendations for surgery.  AR at 21; *see Parra v. Astrue*, 481 F.3d 742, 751

22  (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a

23  claimant's testimony regarding severity of an impairment.").  The ALJ was correct

24  that plaintiff has few treatment records and follows a conservative course of

25  treatment.  Plaintiff takes anti-inflammatory and pain medication.  AR at 309.  *See*

26  *Tommasetti*, 533 F.3d at 1040 (describing physical therapy and anti-inflammatory

27

28                                          11

1   medication as conservative treatment).  But the ALJ's reasoning contains factual

2   errors.  Plaintiff in fact received an epidural injection on November 14, 2008.  AR

3   at 45, 320, 590.  Plaintiff also received two recommendations for surgical

4   intervention.  Dr. Mitchell Geiger, an examining orthopedic surgeon, and Dr.

5   Eduardo E. Anguizola, an examining anesthesiologist, stated that plaintiff was a

6   candidate for surgery.[7]  AR at 522-23, 597.  Plaintiff testified that the reason he

7   had not had surgery was because the insurance company refused to authorize it.

8   AR at 50; *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (adverse credibility

9   finding not supported by failure to obtain treatment due to lack of funds).  Thus,

10  while conservative treatment may in some cases constitute a clear and convincing

11  reason for discounting plaintiff's credibility, the evidence cited by the ALJ here

12  does not support his reasoning because it is factually inaccurate.

13        Second, the ALJ asserted that plaintiff's daily activities are inconsistent

14  with his symptoms.  AR at 21-22.  *See Morgan*, 169 F.3d at 600 (plaintiff's ability

15  "to spend a *substantial part* of [her] day engaged in pursuits involving the

16  performance of physical functions that are transferable to a work setting" may be

17  sufficient to discredit her) (emphasis added).  Specifically, the ALJ cites to

18  plaintiff's Viagra prescription and ability to engage in sexual activity as

19  inconsistent with his complaints.[8]  AR at 21-22.  This is not a clear and convincing

20  reason.  Plaintiff does not need to be "utterly incapacitated."  *Fair v. Bowen*, 885

21  F.2d 597, 603 (9th Cir. 1989).  "[T]he mere fact a plaintiff has carried on certain

22

23        [7]   Although Dr. Geiger opined that plaintiff is impaired and recommended
      surgery, he also stated that "one should be suspicious of the applicant's claim
24    given the number of industrial and nonindustrial prior claims to the lower back
      with incomplete reporting."  AR at 595.
25

26        [8]   Plaintiff was being treated for sexual dysfunction resulting from the pain.
      AR at 568-70.
27

28                                          12

1  daily activities, such as grocery shopping, driving a car, or limited walking for

2  exercise, does not in any way detract from [his] credibility as to [his] overall

3  disability." *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001). Moreover,

4  regardless of whether plaintiff is sexually active, such activity is not inconsistent

5  with the functional limitations that he alleges.

6        In short, the reasons the ALJ stated for his credibility finding are not clear

7  and convincing reasons supported by substantial evidence.

8  **V.**

9  **REMAND IS APPROPRIATE**

10        The decision whether to remand for further proceedings or reverse and

11  award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

12  888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by

13  further proceedings, or where the record has been fully developed, it is appropriate

14  to exercise this discretion to direct an immediate award of benefits. *See Benecke*

15  *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d

16  1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

17  turns upon their likely utility). But where there are outstanding issues that must be

18  resolved before a determination can be made, and it is not clear from the record

19  that the ALJ would be required to find a plaintiff disabled if all the evidence were

20  properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96;

21  *Harman*, 211 F.3d at 1179-80.

22        Here, as set out above, remand is required because the ALJ erred in failing

23  to properly evaluate Dr. Rastegar's opinion and plaintiff's credibility. On remand,

24  the ALJ shall consider all medical opinions, including the opinion provided by Dr.

25  Rastegar regarding plaintiff's impairments and limitations, and either credit his

26  opinion or provide specific and legitimate reasons for rejecting it. The ALJ shall

27

28  13

also reconsider plaintiff's subjective complaints with respect the limitations of his physical impairments, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them.  The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## RECOMMENDATION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED: March 5, 2012

_____
SHERI PYM
United States Magistrate Judge

14